Gerald NICOSIA, Plaintiff,

v.

Diane De ROOY, Defendant.

No. C98–3029 MMC.

United States District Court, N.D. California.

July 7, 1999.

Roger R. Myers, Joshua Koltun, Steinhart & Falconer, San Francisco, CA, for defendant Diane De Rooy.

David A. DeGroot, San Francisco, CA, for plaintiff Gerald Nicosia.

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS; GRANTING DEFENDANT'S MOTION TO STRIKE

CHESNEY, District Judge.

### INTRODUCTION

Before the Court are the motions of defendant Diane De Rooy ("De Rooy") (1) to dismiss, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction; (2) to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim; and (3) to strike, pursuant to California Code of Civil Procedure § 425.16. The Court, having considered the papers filed in support of and in opposition to the motion, and the arguments of counsel presented at the hearing on February 19, 1999, rules as follows:

**1096**

## BACKGROUND

Plaintiff Gerald Nicosia ("Nicosia"), a California resident, brings the instant action for slander and libel in connection with statements De Rooy published about Nicosia on her web-site. According to the Complaint, De Rooy has called Nicosia a killer, an embezzler, a criminal, a fraud, a perjurer, and a liar, and, in particular, De Rooy has stated:

Gerald Nicosia is to the Beats (and Jan) what Charles Manson was to the hippies. Virtually everyone I've interviewed over the 17 months, including disinterested third parties, has said the same thing: Gerald Nicosia killed Jan Kerouac. [Comp., ¶ 36; Request for Judicial Notice ("RJN"), Ex. K].

[Nicosia used a Kerouac seminar] as a publicity stunt, in an effort to keep the public from noticing his embezzlement of at least $33,000 from Jan Kerouac's heirs. [Comp., ¶ 34; RJN, Ex G at 7]. When I began my research 18 months ago, I had no idea I would discover that Gerry Nicosia's [sic] is a self-serving fraud and criminal. [Comp. ¶ 35; RJN, Ex G at 9].

[Joe Grant] is the foremost accomplice of Gerald Nicosia, who for years has been illegally trying to gain ownership of the papers and marketable image of Jack Kerouac. [Comp., ¶ 45; RJN Ex. G at 7].

I thought [Nicosia] was maybe mentally unstable, from the stress of his crusade, perhaps. But I had to cross a line at some point into believing he was simply, deliberately, lying, including perjuring himself in court documents I'd gotten copies of. [Comp., ¶ 37; RJN, Ex. E].

I have personal knowledge of the underhanded and deceitful practices of these two men. Although there is no controversy around the Jack Kerouac Estate, and his papers are in no danger whatsoever, Joe Grant and Gerald Nicosia persist in telling these lies because they are embittered believers in their own publicity. [Comp., ¶ 46; RJN Ex. G at 7].

TWO YEARS AFTER THE DEATH OF JAN KEROUAC, her name is still at the center of controversy. Her heirs are still besieged by a self-celebrating writer with dubious credentials, who is living off the proceeds of her persona. Jan is dead, but she is far from being laid to rest. Many people have unpublished points of view relating to Jan Kerouac's unfortunate association with Gerald Nicosia. These viewpoints clearly reveal a man with Napoleonic aspirations to conquer the literary kingdom; a man who believes he is more ethical than most people; a man who refuses to admit his own desires for money and fame; a man who has alienated, betrayed, or lied to everyone in the Beat community. [Comp., ¶ 44; RJN, Ex. F at 2].

[Nicosia] is far less well known for his biography of Jack Kerouac than he is for his role, many believe, as the Svengali who manipulated Kerouac's daughter, Jan. Two years after the death of Jan Kerouac, hardly a week goes by when Nicosia doesn't invoke the dead woman's name to shore up a sagging writing career. [Comp., ¶ 42; RJN, Ex. F at 5]. Many people have unpublished points of view relating to Jan Kerouac's unfortunate association with Gerald Nicosia. These viewpoints clearly reveal a man with Napoleonic aspirations to conquer the literary kingdom[.] [Comp., ¶ 44; RJN, Ex. F at 2].

Nicosia appears to be so serious about being Jack Kerouac that he's even made application to trademark his name for use, nationally and internationally, in labeling 'Clothing, Games, Toys & Sports Goods' (U.S. Patent & Trademark Office, Serial No. 75–451,862 filed March 17, 1998). Taking his admitted enmeshment and confessed transformation to its next logical level, Gerald Nicosia is Jack Kerouac, and he's here to get his stuff back. [Comp. ¶ 43; RJN, Ex. F at 6].

Nicosia also alleges that De Rooy implied that he had forged a letter from Jan Kerouac (Comp., ¶ 51; RJN Ex. F at 10),

and accused Nicosia of delivering a "heartless" speech about Jan at her memorial service. (Comp., ¶ 52; RJN Ex. F at 20).

## DISCUSSION

### I. Motion to Dismiss for Lack of Personal Jurisdiction

De Rooy moves to dismiss, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction.

#### A. Legal Standard

■ Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss the complaint on the grounds that the court lacks jurisdiction over the defendant. In opposing a motion to dismiss for lack of personal jurisdiction, the plaintiff must present a prima facie case that personal jurisdiction exists over the defendants. *See United States v. Ziegler Bolt and Parts Co.,* 111 F.3d 878, 880 (Fed.Cir.1997).

■ In determining whether the plaintiff has presented a prima facie case, the Court must assume the truth of "well pled" allegations in the complaint that are not contradicted. *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995). The Court need not, however, assume the truth of conclusory allegations. *Id.* Once the defendant has contradicted allegations contained in the complaint, plaintiff may not rest on the pleadings, and must present admissible evidence to support the court's exercise of personal jurisdiction. *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1284 (9th Cir.1977) (*citing Taylor v. Portland Paramount Corp.,* 383 F.2d 634, 639 (9th Cir. 1967)). The plaintiff must produce admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. *WNS, Inc. v. Farrow,* 884 F.2d 200, 203–204 (5th Cir.1989). The court is required to resolve disputed facts in the light most favorable to the plaintiff. *Dakota Industr., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir. 1991).

#### B. Analysis

■ In order to establish personal jurisdiction over defendants, plaintiffs must first show that the forum state's jurisdictional statute confers personal jurisdiction over defendants, and that the exercise of such jurisdiction "accords with federal constitutional principles of due process." *Federal Deposit Ins. Corp. v. British–American Ins. Co., Ltd.,* 828 F.2d 1439, 1441 (9th Cir.1987). California's "long-arm" statute extends jurisdiction to the maximum extent permitted by due process. (*See* Cal. Civ. Proc. § 410.10). Accordingly, the jurisdictional inquiries under state law and constitutional due process principles can be conducted simultaneously. *Pacific Atl. Trading Co. v. M/V Main Express,* 758 F.2d 1325, 1327 (9th Cir.1985).

Nicosia argues that De Rooy is subject to specific jurisdiction in California. In the Ninth Circuit, a three-part test is applied to determine whether specific jurisdiction may be exercised over a defendant consistent with due process principles:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws[;] (2)[t]he claim must be one which arises out of or results from the defendant's forum-related activities[; and ](3)[e]xercise of jurisdiction must be reasonable.

*Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 270 (9th Cir.1995) (citations omitted). For personal jurisdiction over the defendant to comply with due process, all of these requirements must be met. *Id.*

#### 1. Purposeful Availment

" 'Purposeful availment' requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *American Red Cross,* 112

F.3d at 1051. "A defendant has purposefully availed himself of the benefits of a forum if he has deliberately 'engaged in significant activities within a State or has created continuing obligations' between himself and the residents of the forum." *Gray & Co. v. Firstenberg Machinery Co., Inc.*, 913 F.2d 758, 760 (9th Cir.1990) (*quoting Burger King v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985)). Thus, "[i]solated contacts, an attenuated affiliation, or the unilateral activity of another party in the forum state is insufficient." *Advideo, Inc. v. Kimel Broadcast Group, Inc.*, 727 F.Supp. 1337, 1340 (N.D.Cal.1989).

■ Purposeful availment is not satisfied by merely creating a web-site accessible by residents of the forum state. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir.1997) ("Creating a[web]-site, like placing a product into the steam of commerce, may be felt nationwide—or even worldwide—but, without more, it is not an act purposefully directed toward the forum state."). There has to be " 'something more' [than a web-site] to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." *Panavision International, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir.1998) *quoting Cybersell*, 130 F.3d at 418.[1] The requirement of "something more" applies equally to defamation cases involving more traditional forms of publication, like newspapers and magazines. *See Gordy v. Daily News, L.P.*, 95 F.3d 829 (9th Cir.1996) (New York defendants who "wrote and published their allegedly defamatory col-

umn intentionally directing it at … a California resident" must do "something more" to invoke jurisdiction).

■ In the instant case, the parties agree that De Rooy's creation of a web-site in Washington State is not sufficient by itself to subject her to jurisdiction in California. Nicosia must show that De Rooy did "something more" to direct her activities toward this state.

"[T]he circulation of the defamatory material in the forum state is an important factor in the minimum contacts analysis for a defamation action." *Gordy*, 95 F.3d at 833 (*quoting Casualty Assurance Risk Insurance Brokerage v. Dillon*, 976 F.2d 596, 599 (9th Cir.1992)). In *Gordy*, cited by Nicosia, a California resident brought suit in California against a New York newspaper for defamation. *Id.* at 833. The Ninth Circuit found that the newspaper's regular distribution of 13 to 18 copies of its publication in California was sufficient to invoke jurisdiction over the New York defendant. The court reached this conclusion even though more than 99% of the newspaper's circulation was in or near New York City, and only .0017% of the circulation was in California. *Id.* at 830.

Here, De Rooy did more than the defendants in *Gordy* to direct her activities toward California. Nicosia has sufficiently shown that De Rooy sent at least eleven e-mails, out of a total of one hundred, to California addresses, inviting the recipients to view the articles on her web-site. (Id. at ¶¶ 6 & 7).[2] While the absolute number of contacts (11) is comparable to the number of contacts in *Gordy* (13 to 18),

1. In *Panavision*, the defendant used Panavision's trademark as a domain name and posted the related web-site on the Internet. The Ninth Circuit found, that, while creating the web-site was not sufficient, the defendant had satisfied the "something more" requirement because: (1) the defendant knew his conduct would likely injure Panavision in California where Panavision had its principal place of business and where the entertainment industry is largely located and (2) defendant "engaged in a scheme to register Panavision's trademarks as his domain name for the pur-

pose of extorting money from Panavision." *Id.* at 1322.

2. De Rooy objects to Nicosia's declaration that eleven e-mail addresses correspond to California residents on the grounds of lack of foundation and inadmissable conclusion. (De Rooy's Objections to Evidence, 2:19 to 3:9). De Rooy, however, concedes that four of the e-mail addresses "are clearly identifiable as located in California." (De Rooy's Reply, 3:26–28 fn. 2). With respect to Nicosia's declaration regarding the other seven addresses, the Court finds that such declaration is not

the percentage of California contacts (10%) is much higher than that in *Gordy* (.0017%).

De Rooy argues that the instant case is distinguishable from *Gordy* because the defendants in *Gordy* actually delivered the defamatory material into the forum state, while the e-mails she sent merely invited people to view her web-site. This is a distinction without a difference. The "something more" requirement considers whether a defendant sufficiently directed her activities toward the forum state. De Rooy's e-mail invitations target California residents in a way similar to sending the defamatory material itself.[3]

De Rooy also argues that personal jurisdiction does not lie because the brunt of Nicosia's alleged injury is not felt in California, but in New Mexico and Florida, where the probate of the Kerouac estate took place. De Rooy relies upon *Gordy* for the proposition that, when an allegedly defamatory statement concerns activities outside of the forum state, the brunt of the injury is felt outside the forum state. While some language in *Gordy* may be read to support such an interpretation,[4] the facts do not. In *Gordy*, where the Ninth Circuit found jurisdiction proper in California, the court also noted that "[t]he events reported in the allegedly defamatory article did not take place in California, nor did the article mention California." *Id.* at 831. Furthermore, to the extent the content of the story is relevant to personal jurisdiction, the content of De Rooy's arti-

cles actually bolsters a finding of personal jurisdiction. Nicosia's sale of Jan Kerouac's archives to the Bancroft Library, which De Rooy discusses at length on her web-site, took place in California. (See De Rooy Decl., Ex. F at 5).

For the foregoing reasons, the Court finds that Nicosia has made a prima facie showing that De Rooy purposefully directed her activities toward California so as to satisfy the purposeful availment requirement.

## 2. Arising Out of Forum Related Contacts

De Rooy also disputes that the claim arose out of her contacts with California. The Ninth Circuit applies a "but for" test to decide whether a defendant meets this requirement. *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385–86 (9th Cir.1990), *rev'd on other grounds*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). Courts, therefore, must ask the following question: but for the defendant's contacts with the forum state, would the plaintiff's claims against the defendant have arisen? *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir.1995). As applied to the instant case, the answer is clearly "yes." But for De Rooy's posting of her articles on her web-site and sending e-mails to Californians, Nicosia's claims against De Rooy would not have arisen.

## 3. Reasonableness

De Rooy also argues that exercising jurisdiction would be unreasonable[5] because

---

conclusory and does not lack foundation for purposes of the instant motions. Accordingly, the Court hereby overrules De Rooy's objection to this evidence. In addition, even if the seven other addresses were not admissible, their absence would not materially alter the Court's analysis.

3. Indeed, these e-mails are even more calculated to have an effect in California than the newspaper subscriptions delivered in *Gordy*, because the e-mails were sent to specific individuals likely to be interested in the specific subject matter of De Rooy's articles. In contrast, the New York newspaper in *Gordy* printed many different articles covering a large variety of topics, and, consequently, the

defendant newspaper would have little reason to believe that its California subscribers would be interested in the specific subject matter of the allegedly defamatory article.

4. *See Gordy* at 834 (distinguishing *Demaris v. Greenspun*, 712 F.2d 433 (9th Cir.1983), which found no personal jurisdiction even though defendant distributed several hundred copies of allegedly defamatory article to forum state, on grounds that article in *Demaris* primarily concerned out-of-state activities).

5. In the Ninth Circuit, there are seven factors that courts consider in determining whether the exercise of personal jurisdiction is reasonable:

De Rooy does not have the financial means to defend the instant suit in California. The defendant has the burden of showing unreasonableness and must do so by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir.1995) (citation omitted). Although the burden of defending in the forum state is a factor in assessing reasonableness, unless the "inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128–29 (9th Cir.1995) (citation omitted).

Here, De Rooy has not demonstrated that her inconvenience is so great as to constitute a deprivation of due process and has not otherwise made a compelling showing of unreasonableness. Therefore, the Court finds the exercise of jurisdiction reasonable.

For the foregoing reasons, the Court finds that De Rooy is subject to personal jurisdiction in California. Accordingly, the Court hereby DENIES De Rooy's motion to dismiss, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction.

## II. Motion to Dismiss for Failure to State a Claim

De Rooy also brings a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears beyond doubt that the plaintiff can

(1) The extent of the purposeful interjection into the forum state; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to

prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). Dismissal is disfavored, however, and should be granted only in "extraordinary" cases. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir.1981).

Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir.1989). Material which is properly submitted as part of the complaint may, however, be considered. *Id.* In addition, documents specifically referred to in a complaint, though not physically attached to the pleading, may be considered where authenticity is unquestioned. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994). Finally, the Court may take judicial notice of matters of public record. *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir.1986).

In analyzing a motion to dismiss, the Court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). Factual allegations may be disregarded, however, if contradicted by documents to which the court may properly refer. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987). Conclusory allegations, unsupported by the facts alleged, need not be accepted as true. *Holden v.*

the plaintiff's interest in convenient and effective relief; (7) the existence of an alternative forum.
*Federal Deposit Ins. Corp. v. British–American Ins. Co., Ltd.*, 828 F.2d 1439, 1442 (9th Cir. 1987) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir.1986)).

*Hagopian,* 978 F.2d 1115, 1121 (9th Cir. 1992).

## B. Analysis

De Rooy argues that Nicosia's complaint should be dismissed (1) because, as a matter of law, the allegedly defamatory statements are opinions protected by the First Amendment, and (2) because Nicosia has failed to sufficiently allege actual malice. Nicosia responds that the challenged statements are unprotected assertions of fact, or at least imply assertions of fact, and that he has sufficiently pled actual malice.

### 1. Opinion or Fact

Whether a statement is an assertion of fact or opinion is a question of law for the court. *Dworkin v. Hustler Magazine, Inc.,* 867 F.2d 1188, 1193 (9th Cir. 1989); *Baker v. Los Angeles Herald Examiner,* 42 Cal.3d 254, 260, 228 Cal.Rptr. 206, 209 (1986); *Gaeta v. Delta Airlines, Inc.,* 1997 WL 655953, at *4 (N.D.Cal. 1997). Pure opinions—"those that do not imply facts capable of being proved true or false"—are protected by the First Amendment. *Partington v. Bugliosi,* 56 F.3d 1147, 1153 fn. 10 (9th Cir.1995). Assertions of fact and statements that "may imply a false assertion of fact," however, are not protected. *Id.* (quotes, citations, ellipses omitted). To determine whether a statement implies an assertion of fact, the Ninth Circuit applies the following three-part test:

> [W]e examine the totality of the circumstances in which it was made. First, we look at the statement in its broad context, which includes the general tenor of the entire work, the subject of the statement, the setting, and the format of the work. Next we turn to the specific context and content of the statement, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation. Finally, we inquire whether the statement itself is sufficiently factual to be susceptible of being proved true or false.

*Underwager v. Channel 9 Australia,* 69 F.3d 361, 366 (9th Cir.1995).

### a. Broad Context

Following the test articulated in *Underwager,* the Court first considers the general context of the allegedly defamatory statements. Nicosia does not dispute that De Rooy's statements were published on her personal web-site, and through Internet discussion groups, as part of a heated debate concerning a bitter legal dispute. Nicosia has fully engaged De Rooy in this debate. (See, e.g., RJN, Ex. N).

In this context, readers are less likely to view statements as assertions of fact. *See Underwager,* at 366–67 (audience would likely view comments made in context of heated debate as "spirited critique" and "would expect emphatic language on both sides"); *Information Control v. Genesis One Computer Corp.,* 611 F.2d 781, 784 (9th Cir.1980) (in context of legal dispute, "the audience may anticipate efforts by the parties to persuade others to their position by use of epithets, fiery rhetoric or hyperbole, [and thus] language which generally might be considered as statements of fact may well assume the character of statements of opinion.").

Nicosia argues that, despite the controversial subject matter of the debate, the general tenor of De Rooy's articles suggests that her statements are assertions of fact. Nicosia posits that words like "19 months of research," "first-hand experience," "findings," "definitive overview," "discover," and "truth" indicate assertions of fact, not opinion. These words, however, were not included in the articles containing the alleged defamation, but instead were contained in articles published after Nicosia filed the instant lawsuit. This post-litigation language cannot be considered part of the general context of the pre-litigation articles.

De Rooy does state in a pre-litigation article that the piece is just a "condensed Internet version of a full-length book." (RJN, Ex. F at 1). While this language

suggests that, as Nicosia states, the articles "are not quickly produced unconsidered cybertrash" (Opp. at 15:20–21), it does not fundamentally alter the tenor of De Rooy's articles.

### b. Specific Statements

The second prong of the totality of circumstances test considers the specific context and content of the allegedly defamatory statements, which includes the extent of figurative and hyperbolic language and the reasonable expectations of the readers. Of particular importance is the principal that "when an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment." *Partington*, at 1156–57. The third prong of the test considers whether the statements are susceptible of being proved true or false. *Underwager*, at 366. In light of the general context discussed, the Court applies the second and third prongs of the test to each allegedly defamatory statement contained in Nicosia's complaint to determine whether such statement implies an assertion of fact.

### 1) Allegations of Crimes

De Rooy's articles contain accusations that Nicosia committed murder, embezzlement, fraud, and perjury. The Court addresses each in turn.

### a) Murder

■ De Rooy wrote, in an e-mail to Carol Shank:

> Gerald Nicosia is to the Beats (and Jan) what Charles Manson was to the hippies. Virtually everyone I've interviewed over the 17 months, including disinterested third parties, has said the same thing: Gerald Nicosia killed Jan Kerouac. [Comp., ¶ 36; RJN, Ex. K].

Nicosia argues that De Rooy's charge that he killed Jan Kerouac is an actionable

assertion of fact. The disclosed, underlying facts, however, reveal that Shank understood De Rooy was using hyperbolic and figurative language, that De Rooy was merely expressing her opinion that Nicosia contributed to Jan's declining health by involving her in protracted litigation, and that De Rooy was not literally accusing Nicosia of murder. De Rooy's articles repeatedly criticized Nicosia for involving Jan in litigation while her health was failing. For example, De Rooy quoted Jan's biographer as writing that "Some, like her father's long-time friend, Beat poet Allen Ginsberg, suggested that she was killing herself by fighting an unnecessary battle .... Part of Ginsberg's complaint about the lawsuit was that Gerry Nicosia and Tom Brill, Jan's lawyer in California, were taking advantage of a sick and vulnerable individual." (RJN, Ex. F at 15; see also, e.g., Ex. F at 3, 8, 9 & 16). In this context, Shank would understand that De Rooy was not literally accusing Nicosia of murder, but only alleging that the litigation contributed to Jan's decline in health.[6]

The Court finds that the above statement contained in ¶ 36 of the complaint is not actionable, and hereby GRANTS De Rooy's motion to dismiss with respect to the same.

### b) Embezzlement

■ De Rooy wrote that Nicosia used a Kerouac seminar "as a publicity stunt, in an effort to keep the public from noticing his embezzlement of at least $33,000 from Jan Kerouac's heirs." (Comp., ¶ 34; RJN, Ex G at 7). De Rooy argues that the allegation is based on disclosed facts surrounding Nicosia's sale of Jan Kerouac's archives to the Bancroft library, and his licensing of Jack Kerouac's name to Levi Straus company. Nicosia responds that De Rooy failed to disclose any underlying facts, and to the extent any facts were disclosed, De Rooy omitted reference to

---

6. Nicosia does not dispute that whether a course of action contributes to a decline in a person's health is a matter of opinion.

the accounting Nicosia provided in relation to allegedly embezzled proceeds.

Nicosia argues that the embezzlement accusation must be read in isolation from De Rooy's other articles because the news group posting which contained the allegation did not include any underlying facts. However, the news group posting directed readers to specific articles on De Rooy's web-site and provided a hyperlink for immediate access to such articles. (RJN, Ex G at 7). These articles were at least as connected to the news group posting as the back page of a newspaper is connected to the front. Thus, the Court considers the articles part of the context of the embezzlement accusation.

In the articles, De Rooy provides the underlying basis for the embezzlement accusation. For example, she published a letter written by Jan's brother which stated in part:

> After sending the Bancroft Library in Berkeley notification that in the event of a sale of Jan's archives, 10 percent would go to Gerry (as per the codicil) and the remaining should be sent to the General Personal Representative to allot as needed, this notification was ignored. The sale happened. [¶] I called Gerry and asked him "Did you intend to call John or I?" No, he did not. "Where is the remaining 90?" He had it all. [¶] As this was not his money to keep, I call this embezzlement. [RJN, Ex. F at 5]. [Nicosia] received $20,000 for the sale of Jan Kerouac's archive to the Bancroft Library at Berkeley, and $11,000 for licensing Jack Kerouac's name to Levi Straus. His first financial accounting to the heirs for these deals reveals that he has spent every dime of these proceeds, these "benefits Jan intended" for her heirs. [Id. at 13].

Similar references to the alleged misdeeds are contained throughout the article. (See id., e.g., at 14, 19). Nicosia does not dispute that he sold Jan's archives to the Bancroft Library, licensed Jack Kerouac's name to Levi Strauss, and kept the proceeds from both transactions. Nor does Nicosia dispute that Jan's heirs filed suit against Nicosia for disgorgement alleging that Nicosia is only entitled to 10% of the proceeds. Nicosia merely argues that "De Rooy never discusses anywhere the fact that Nicosia did provide a full accounting of the money is [sic] supposedly took." (Opp. at 17:2–3). This argument is not well-taken. First, in light of the language quoted above, it appears that De Rooy actually did mention an accounting relating to the subject transaction. Second, the record indicates that Nicosia provided this accounting only after a court ordered him to do so. (RJN, Exs. A & B). As such, any omission with regard to the accounting would not be material to the accusation of embezzlement.

The Court finds that De Rooy adequately disclosed the facts underlying her conclusion that Nicosia embezzled money from Jan Kerouac's heirs. Accusations of criminal activity, like other statements, are not actionable if the underlying facts are disclosed. *In re Yagman*, 796 F.2d 1165, 1174 (9th Cir.1986); *Dunn v. Gannett New York Newspapers*, 833 F.2d 446, 453–54 (3rd Cir.1987). In *Dunn*, the mayor sued a newspaper for suggesting that the mayor embezzled funds. The court found the statement not actionable, in part because the newspaper disclosed the basis for its conclusion. *Id.* The basis of the newspaper's embezzlement allegation was that the city learned that funds were missing and the mayor ordered employees not to talk to the press. *Id.* Like the newspaper in *Dunn*, De Rooy has disclosed the underlying facts and allowed readers to decide for themselves whether the facts amounted to embezzlement.

The Court finds that De Rooy's statements regarding embezzlement contained in ¶ 34 of the complaint are not actionable, and hereby GRANTS De Rooy's motion to dismiss with respect to the same.

**c) Fraud, Criminal, Acting Illegally**

■ De Rooy wrote:

When I began my research 18 months ago, I had no idea I would discover that

Gerry Nicosia's [sic] is a self-serving fraud and criminal. [Comp. ¶ 35; RJN, Ex G at 9].

[Joe Grant] is the foremost accomplice of Gerald Nicosia, who for years has been illegally trying to gain ownership of the papers and marketable image of Jack Kerouac. [Comp., ¶ 45; RJN Ex. G at 7].

De Rooy argues that the statements accusing Nicosia of being a "fraud," a "criminal" and acting illegally are rhetorical hyperbole, and even if taken seriously, are still not actionable because she disclosed the underlying facts. Nicosia argues that De Rooy failed to disclose any underlying facts.

As discussed, De Rooy's articles are considered part of the context in which the news group's posting must be read. Like the embezzlement accusation discussed above, the "fraud" and "criminal" accusations would be understood by the average reader as referring to the sale of Jan Kerouac's archive, and the licensing of Jack Kerouac's name. For example, De Rooy wrote that "[a]s to the adjective, 'criminal,' Jan Kerouac's heirs, from whom [plaintiff] has withheld more than $33,000 since assuming his position as Literary Executor, have already taken legal action against him." (RJN, Ex. F at 19).

With respect to the allegation that Nicosia acted illegally to gain control over Jack Kerouac's name and image, Nicosia argues that the only disclosed information is a false statement regarding Nicosia's application to trademark Jack Kerouac's name. (See RJN, Ex. D). This argument is not well-taken. Throughout her articles De Rooy attacks a variety of Nicosia's actions regarding Jack Kerouac's estate, not just the trademark application. For example, De Rooy repeatedly suggests that Nicosia is mistaken in his belief that the Sampas

family forged Jack Kerouac's will.[7] In light of the many criticisms, the average reader would understand "acted illegally" to be a hyperbolic expression intended to convey that De Rooy believed Nicosia had improperly challenged Jack Kerouac's estate. Such an assertion is too loose and hyperbolic to be susceptible of being proved true or false. In addition, De Rooy through her examples has revealed the underlying basis for her opinion, allowing readers to reach their own conclusions.

The Court finds that the statements contained in ¶ 35 and ¶ 45 of the complaint are not actionable, and hereby GRANTS De Rooy's motion to dismiss with respect to the same.

### d) Perjury

De Rooy wrote:

I thought [Nicosia] was maybe mentally unstable, from the stress of his crusade, perhaps. But I had to cross a line at some point into believing he was simply, deliberately, lying, including perjuring himself in court documents I'd gotten copies of. [Comp., ¶ 37; RJN, Ex. E].

De Rooy argues that she disclosed the facts underlying the perjury accusation. De Rooy, however, has not directed the Court to any statements in the relevant articles identifying the documents containing the alleged perjury or otherwise disclosing her basis for believing Nicosia lied in such documents.

Nicosia argues that De Rooy's failure to disclose renders the perjury accusation actionable. To support this contention, Nicosia relies on *Milkovich v. Lorain Journal Co.* 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). In *Milkovich,* the Supreme Court found that the defendants' statements accusing the plaintiff of lying under oath at a hearing were not "loose,

---

7. See, e.g., RJN, Ex. G at 11 ("When Jan, goaded on by Gerald Nicosia, turned against her father's legal heirs, she did so by essentially accusing them of a heinous crime, turning them into enemies. I, for one, am impressed by the restraint of the Sampas family. I'm surprised they didn't do more to retaliate, something more commensurate with this level of betrayal."). Nicosia does not argue that De Rooy's difference of opinion on this matter is actionable, nor would such an argument be fruitful, considering that the issue appears to be one of great controversy inviting reasonable minds to differ.

figurative or hyperbolic," and were sufficiently factual to be susceptible to being proved true or false. *Id.*, 497 U.S. at 21–22, 110 S.Ct. at 2707. De Rooy posits that *Milkovich* is distinguishable from the instant case because, unlike *Milkovich*, De Rooy disclosed the facts underlying her accusation of perjury. For support, De Rooy cites *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 730 (1st Cir.1992) where the First Circuit distinguished *Milkovich* on these grounds. De Rooy's argument must fail as the basic premise is flawed—De Rooy did not identify the documents or otherwise disclose the basis for her conclusion that Nicosia had committed perjury.

De Rooy also argues that she sufficiently couched the perjury allegation in equivocal language—"I thought," "perhaps," "had to cross the line into believing"—so as to signal to the reader that what follows is opinion. While De Rooy's cautious phrasing is considered among the totality of circumstances, it is not sufficient to dispel the otherwise plain assertion of fact. *See Milkovich*, 497 U.S. at 18–19, 110 S.Ct. at 2705–06 (phrases like "in my opinion" and "I think" do not dispel defamatory implications). In addition, any mitigating effect this language might have is offset by De Rooy's inclusion of the phrase "in court documents I'd gotten copies of." This wording suggests that De Rooy based her conclusion on fact.

The Court finds that the statements contained in ¶ 37 of the complaint accusing Nicosia of perjury are actionable, and

hereby DENIES De Rooy's motion to dismiss with respect to the same.

### 2) Allegations of Dishonesty

 De Rooy wrote:

"I have personal knowledge of the underhanded and deceitful practices of these two men. Although there is no controversy around the Jack Kerouac Estate, and his papers are in no danger whatsoever, Joe Grant and Gerald Nicosia persist in telling these lies because they are embittered believers in their own publicity." [Comp., ¶ 46; RJN Ex. G at 7].

De Rooy also describes Nicosia as "a man who has alienated, betrayed, or lied to everyone in the Beat community." [Comp., ¶ 44; RJN, Ex. F at 2].

Nicosia argues that De Rooy's accusations of dishonesty imply assertions of fact which were never disclosed. The record, however, is replete with examples where De Rooy identifies specific representations by Nicosia and then reveals her basis for believing that such representations are inaccurate or false.[8] Indeed, an important, if not the primary focus of De Rooy's articles, is her disagreement with Nicosia's claims that he is carrying out the wishes of Jan Kerouac and that the Sampas family is threatening Jack Kerouac's estate. In discussing these matters, De Rooy provides facts, which Nicosia does not challenge, underlying her allegations that Nicosia is not telling the truth. De Rooy's readers could draw their own conclusions from the material presented, especially considering

8. For example, De Rooy provides statements, alleged to have been written by Nicosia, which accuse Sampas of wrongdoing in connection with Jan Kerouac's burial. De Rooy then describes her version of the events, concludes that Sampas treated Jan fairly with respect to the burial, and states that Nicosia's statements regarding the events are a "fabrication of facts." (RJN, Ex. F at 23–24). See also, e.g., RJN, Ex. F at 13–14 (discussing contradictory statements Nicosia allegedly made in describing his financial incentive to continue battle over Jack Kerouac estate); RJN, Ex. F at 16 (disagreeing with Nicosia's statement that Jan's vision was not seriously impaired); RJN, Ex. F at 19–20 (disputing Nicosia's version of events at 1995 NYU Beat Conference); RJN, Ex. F at 20 (disagreeing with Nicosia's description of his relationship with Jan); RJN, Ex. G at 5 (disputing Nicosia's claim that University of Massachusetts library had closed archive containing Nicosia's research on Jack Kerouac); RJN, Ex. G at 12–13 (disputing Nicosia's alleged assertion that Sampas was interviewed for article); RJN, Ex. G at 13 (disagreeing with Nicosia's view that Jack Kerouac wanted his works studied by scholars).

that De Rooy included Nicosia's contrary views in her articles.

Moreover, in the context of the heated debate on the Internet, readers are more likely to understand accusations of lying as figurative, hyperbolic expressions. *See Faltas v. State Newspaper,* 928 F.Supp. 637, 646–648 (D.S.C.1996) (words "lie" and "liar" considered "hyperbole," in part because written in context of "highly controversial topic"), *aff'd,* 155 F.3d 557, 1998 WL 414238 (4th Cir.1998). Indeed, the Ninth Circuit has found in a similar context that "the term 'lying' applies to a spectrum of untruths including white lies, partial truths, misinterpretation, and deception[,]and [a]s a result, the statement is no more than nonactionable rhetorical hyperbole, a vigorous epithet used by those who considered [the appellant's] position extremely unreasonable." *Underwager,* 69 F.3d at 367 (citations, internal quotations omitted).

The Court finds that the statements contained in ¶ 44 and ¶ 46 of the complaint are not actionable, and hereby GRANTS De Rooy's motion to dismiss with respect to the same.

### 3) Other Allegations

■ De Rooy accused Nicosia of being a "manipulative" "Svengali," with "Napoleonic aspirations," who carried on an "exploitative business relationship" with Jan Kerouac and gave a "heartless speech" at Jan's funeral. De Rooy also makes statements, to which Nicosia objects, regarding one of Jan's letters and an application to trademark Jack Kerouac's name.

#### a) Manipulative Svengali

De Rooy accused Nicosia of being a Svengali:

[Nicosia] is far less well known for his biography of Jack Kerouac than he is for his role, many believe, as the Svengali who manipulated Kerouac's daughter, Jan. Two years after the death of Jan Kerouac, hardly a week goes by when Nicosia doesn't invoke the dead woman's name to shore up a sagging writing career. [Comp., ¶ 42; RJN, Ex. F at 5].

Nicosia argues that De Rooy's accusation that he manipulated Jan Kerouac is or implies an assertion of fact. Manipulation, however, refers to subjective motivations and personality traits, which are not provable as true or false. *See Underwager,* at 367 (finding statements reflecting motivations and personality not provable). Further demonstrating the nonfactual character of De Rooy's accusation is the colorful, figurative language it contains and the controversial debate in which it appears.

The Court finds that the above statements contained in ¶ 42 of the complaint are not actionable, and hereby GRANTS De Rooy's motion to dismiss with respect to the same.

#### b) Napoleonic Aspirations

De Rooy accused Nicosia of having "Napoleonic aspirations":

Many people have unpublished points of view relating to Jan Kerouac's unfortunate association with Gerald Nicosia. These viewpoints clearly reveal a man with Napoleonic aspirations to conquer the literary kingdom[.] [Comp., ¶ 44; RJN, Ex. F at 2].

Nicosia argues that De Rooy's accusation that Nicosia has "Napoleonic aspirations" is or implies an assertion of fact. Like De Rooy's accusation that Nicosia is manipulative and a Svengali, however, De Rooy's accusation that Nicosia has "Napoleonic aspirations" refers to subjective motivation which is not provable true or false, contains colorful and hyperbolic language, and appears in the context of a controversial debate on the Internet.

The Court finds that De Rooy's statement regarding Nicosia's alleged "Napoleonic aspirations" contained in ¶ 44 of the complaint is not and does not imply an assertion of fact, is not actionable, and hereby GRANTS De Rooy's motion to dismiss with respect to the same.

#### c) Exploitative Business Relationship; Improper Author/Agent Agreement

De Rooy wrote:

Nicosia's relationship with Jan is characteristic of an exploitative business relationship. Two weeks after Jan drew up her first Will in September 1992, Nicosia handed her something else to sign: an author/agent agreement that would allow him to represent her Kerouac interests for a commission. He signed it. She didn't. [Comp., ¶ 53; RJN Ex. F at 20].

Nicosia argues that De Rooy's accusation that Nicosia had an "exploitative business relationship" with Jan is or implies an assertion of fact. Such a statement, however, is merely an evaluative judgment which is not provable true or false. *See PETA v. Bobby Berosini, Ltd.,* 111 Nev. 615, 895 P.2d 1269, 1275 (1995) (citing W. Page Keeton, *Prosser and Keeton on Torts,* 814 (5th Ed.1984)) ("evaluative" judgments about the quality of a person's behavior, such as statements that plaintiff's actions were cruel or abusive are protected as a matter of law).

The Court finds that the language "exploitative business relationship" contained in ¶ 53 is not and does not imply an assertion of fact, is not actionable, and hereby GRANTS summary adjudication with respect to this statement.

Nicosia also argues that De Rooy's accusation that Jan never signed the author/agent agreement is an assertion of fact. In contrast to the term "exploitative," whether or not Jan signed the agreement is provable as true or false—a copy of the alleged agreement would suffice to establish this assertion. In addition, De Rooy's statement regarding the author/agent agreement is not hyperbolic, or figurative, nor is it based on undisputed, disclosed facts.

The Court finds the allegation in ¶ 53 of the complaint indicating that Jan did not sign the author/agent agreement constitutes an assertion of fact, and hereby DENIES De Rooy's motion to dismiss as protected opinion with respect to the same.

### d) Heartless Eulogy

De Rooy wrote that Nicosia spoke "heartlessly" against Jan Kerouac at her funeral. (Comp., ¶ 52; RJN Ex. F at 20). Nicosia argues that accusing him of presenting a "heartless" eulogy is or implies an assertion of fact. Whether a person speaks heartlessly is an evaluative judgment not provable true or false. Additionally, this statement appears in the context of a controversial debate on the Internet.

The Court finds that the statements contained in ¶ 52 are not and do not imply defamatory assertions of fact, are not actionable, and hereby GRANTS De Rooy's motion to dismiss with respect to the same.

### e) Enmeshment with Jack Kerouac; Improper Trademark Application

De Rooy wrote that Nicosia applied to trademark the name of Jack Kerouac.

Nicosia appears to be so serious about being Jack Kerouac that he's even made application to trademark his name for use, nationally and internationally, in labeling 'Clothing, Games, Toys & Sports Goods' (U.S. Patent & Trademark Office, Serial No. 75–451,862 filed March 17, 1998). Taking his admitted enmeshment and confessed transformation to its next logical level, Gerald Nicosia is Jack Kerouac, and he's here to get his stuff back. [Comp. ¶ 43; RJN, Ex. F at 6].

Nicosia argues that this statement implies that he has a multiple personality disorder. Even assuming one could argue this is fairly implied, and the Court does not so find, such an implication would constitute no more than speculation, containing figurative, hyperbolic language, and appearing in the context of a heated debate on the Internet.

The Court finds that the statement in ¶ 43 of the complaint regarding Nicosia's alleged enmeshment with Jack Kerouac is and does not imply an assertion of fact, is not actionable, and hereby GRANTS De Rooy's motion to dismiss with respect to the same.

Nicosia also argues that the above statement implies that he made the trademark application on his own behalf, instead of on behalf of the estate of Jan Kerouac. Such

an implication, however, is not supported, considering the context in which the statement appears. As De Rooy has not shown any disinclination for directly accusing Nicosia of fraud, embezzlement and murder with regard to other estate matters, the average reader would likely assume that, if De Rooy intended to accuse Nicosia of misappropriating trademark rights, she would have done so expressly. The audience, reading the statement in this context, would understand De Rooy to be stating nothing more than her belief that Nicosia is obsessed with Jack Kerouac.

The Court finds that the statements contained in ¶43 regarding the trademark application are not and do not imply assertions of fact, are not actionable, and hereby GRANTS De Rooy's motion to dismiss with respect to the same.

#### f) Jan Kerouac's Letter

De Rooy wrote that Nicosia attempted to "detach himself" from one of Jan's letters. (Comp., ¶51; RJN Ex. F at 10). Nicosia argues that De Rooy implied that he forged the letter and then lied about it, and such an implication constitutes an assertion of fact. In context, however, a reader would not infer that Nicosia forged the letter, but instead would merely understand that Jan dictated the letter to Nicosia. De Rooy wrote that "it wouldn't have been a big deal if [Nicosia had] simply said, 'Yeah, she dictated it to me over the phone and I typed it up for her, mailed it to her, she signed it and sent it to Lowell.'" Additionally, De Rooy discloses the facts underlying any possible implication of forgery, providing the readers with the requisite information to draw their own conclusions.

The Court finds that the statements contained in ¶51 of the complaint are not and do not imply assertions of fact, and hereby GRANTS De Rooy's motion to dismiss with respect to the same.

In sum, the Court finds that only two of De Rooy's challenged statements are not subject to dismissal as protected opinion:

(1) De Rooy's accusation that Nicosia "perjured himself in court documents I'd gotten copies of" contained in ¶37 of the complaint, and (2) De Rooy's accusation that Jan Kerouac did not sign the author/agent agreement contained in ¶53 of the complaint. With respect to the claims based upon these two statements, the Court hereby DENIES De Rooy's motion to dismiss. With respect to the claims based upon all other statements, the Court hereby GRANTS De Rooy's motion to dismiss on the grounds that such statements constitute protected opinion.

#### 2. Actual Malice

■ De Rooy also moves to dismiss pursuant to Rule 12(b)(6) on the independent ground that Nicosia has failed to adequately plead actual malice. Public figures must prove actual malice in order to recover on defamation claims. *New York Times v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Actual malice means that the defamatory statement was made with "knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* Reckless disregard means that the publisher "in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). To prove actual malice, a plaintiff must "demonstrate with clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubts as to the truth of his statement." *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485, 511 n. 30, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

■ Nicosia does not dispute that he is a limited-purpose public figure subject to the actual malice standard. Nor does Nicosia dispute that actual malice must be pled with specificity. *See Barger v. Playboy Enterprises, Inc.,* 564 F.Supp. 1151, 1156 (N.D.Cal.1983) (requiring heightened pleading standard for malice; dismissing case with prejudice for failure to satisfy requirement).[9] Instead, Nicosia presents

---

**9.** *See also Kottle v. Northwest Kidney Centers,* 146 F.3d 1056, 1063 (9th Cir.1998) *quoting*

two arguments to demonstrate that his complaint satisfies the heightened pleading standard.

First, Nicosia contends that his allegations that De Rooy was "motivated by a desire to advance her career, her book/calendar project, and by an animus toward him" sufficiently plead malice. (Opp. 20:14–16 (citing Comp. ¶ 25–31 and Nicosia Decl. ¶ 15)). The Court disagrees. Economic interests of the defendant and animus toward the plaintiff cannot serve as a basis for actual malice. *Harte–Hanks Comm. Inc. v. Connaughton,* 491 U.S. 657, 665, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) ("Motive in publishing a story ... cannot provide a sufficient basis for finding actual malice.") "[T]he actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Id.* at 666, 109 S.Ct. 2678. "Nor can the fact that the defendant published the defamatory material in order to increase its profits suffice to prove actual malice." *Id.* at 667, 109 S.Ct. 2678.

Second, Nicosia argues malice is sufficiently pled because De Rooy is a self-proclaimed expert on the subject events and therefore De Rooy must have knowingly stated the falsehoods or at least been reckless with regard to the truth. There are two problems with this contention. One, Nicosia does not direct the Court to language in the complaint reflecting the above allegations. Two, even if the complaint did allege as much, conclusory statements that De Rooy should have known the truth does not satisfy the heightened pleading standard. In *Bose Corp. v. Consumers Union,* 466 U.S. 485, 512–13, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984), the Supreme Court rejected a similar argument proffered by the plaintiff in that case. The Supreme Court found that the trial court erred in finding actual malice based on the argument that the writer "must have realized the statement was inaccurate at the

time he wrote it" because the writer was an expert in the field and the information upon which he relied did not support his conclusion. *Id.* Likewise, the Ninth Circuit has stated that a "must" or "should have" known argument "is an objective negligence test while the actual malice test ... is deliberately subjective." *Newton v. NBC, Inc.,* 930 F.2d 662, 680 (9th Cir. 1990).

Accordingly, the Court finds that Nicosia has failed to plead actual malice with the required specificity, and hereby GRANTS De Rooy's motion to dismiss for failure to state a claim. For the reasons expressed in the following section, leave to amend would be futile.

## III. Motion to Strike—CCCP § 425.16

De Rooy brings a motion to strike the instant action pursuant to California Code of Civil Procedure § 425.16.

### A. Legal Standard

The California legislature enacted section 425.16 to "provid[e] a fast and inexpensive unmasking and dismissal of SLAPP[ ]" suits. SLAPP suits are "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances in connection with a public issue." *Wilcox v. Superior Court,* 27 Cal. App.4th 809, 819, 33 Cal.Rptr.2d 446 (1994) (quoting Cal.Civ.Proc.Code § 425.16(a), (b)). A defendant who brings a section 425.16 motion has the initial burden of presenting a prima facie case that the suit arises "from any act of [defendant] in furtherance of [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue." *Wilcox,* at 820, 33 Cal. Rptr.2d 446 (quoting Cal.Civ.Proc.Code § 425.16(b)) (internal quotations omitted).

---

*Franchise Realty Interstate Corp. v. Board of Culinary Workers,* 542 F.2d 1076, 1082–83 (9th Cir.1976) ("[W]hen 'a plaintiff seeks damages ... for conduct which is prima facie protected by the First Amendment, the danger

that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required.' ").

■ If defendant meets this burden, the burden shifts to the plaintiff to establish "a probability that plaintiff will prevail on the claim." *Wilcox*, at 823, 33 Cal. Rptr.2d 446 (quoting Cal.Civ.Proc.Code § 425.16(b)). To show a probability of prevailing, "the plaintiff must demonstrate the complaint is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilcox*, at 824, 33 Cal.Rptr.2d 446. The determination is made on the basis of the pleadings, as well as supporting and opposing affidavits stating the facts upon which the liability or defense is based. Cal.Civ.Proc.Code § 425.16(b)(2). Pleadings by themselves are inadequate to demonstrate a prima facie case—the plaintiff must submit admissible evidence to show a probability of prevailing at trial. *Evans v. Unkow*, 38 Cal.App.4th 1490, 1497–98, 45 Cal.Rptr.2d 624, 628–29 (1995).

## B. Analysis

■ De Rooy argues that the motion to strike should be granted because (1) section 425.16 motions may be brought in federal court, (2) De Rooy has made a prima facie showing that Nicosia's complaint arises out of acts in furtherance of De Rooy's right of free speech in connection with a public issue, and (3) Nicosia has failed to make a prima facie showing of probability of success on the merits. Nicosia does not dispute the first two contentions.[10] Consequently, the burden shifts to Nicosia to make a prima facie case that he will probably prevail at trial.

De Rooy asserts that Nicosia has not satisfied this burden because Nicosia has not sufficiently alleged actual malice in his complaint and has not provided the requisite admissible evidence to make a prima

facie case of actual malice. Nicosia responds that his allegations and evidence regarding malice are sufficient, and to the extent they are not, he requests an opportunity to conduct discovery on this limited issue.

The Court has already determined, in the context of De Rooy's motion to dismiss, that Nicosia has failed to adequately plead malice. In addition to the pleading defects, Nicosia has failed to present any admissible evidence which would support a finding of malice.[11] As stated above, the plaintiff has the burden of presenting admissible evidence to make a prima facie showing. *Evans*, 38 Cal.App.4th at 1497–98, 45 Cal.Rptr.2d 624. Thus, on the allegations and declarations presented, Nicosia has failed to demonstrate that he probably would prevail on his defamation claims as required under section 425.16.

Nicosia requests, if it is concluded that he has failed to present a prima facie case, that the Court afford him the opportunity to conduct limited discovery on the issue of actual malice. He seeks to depose De Rooy and to request documents (but without indicating from whom). Section 425.16(g) provides that "[t]he court, on noticed motion and for good cause shown, may order that specified discovery be conducted . . . ." In *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*, 37 Cal. App.4th 855, 868, 44 Cal.Rptr.2d 46 (1995), the California Court of Appeal interpreted this section to mean the following:

> If the plaintiff makes a timely and proper showing in response to the motion to strike, that a defendant or witness possesses evidence needed by plaintiff to establish a prima facie case, the plaintiff must be given the reasonable opportunity to obtain that evidence through dis-

---

**10.** With respect to De Rooy's first contention, the Ninth Circuit recently ruled that under the *Erie* doctrine California's anti-SLAPP statute applies in federal court. *Newsham v. Lockheed Missiles & Space Co., Inc.*, 171 F.3d 1208 (9th Cir.1999).

**11.** De Rooy has filed an objection to a number of statements contained in Nicosia's declaration which Nicosia submitted in opposition to De Rooy's motion to strike. As the statements, even if believed, would not establish a prima facie case of actual malice, the Court need not decide whether the challenged statements are admissible.

covery before the motion to strike is adjudicated. The trial court, therefore, must liberally exercise its discretion by authorizing reasonable and specified discovery timely petitioned for by a plaintiff ... when evidence to establish a prima facie case is reasonably shown to be held, or known, by defendant[.]

In other words, trial courts should liberally allow requests for discovery, but only if the plaintiff demonstrates "that a defendant or a witness possesses evidence needed by plaintiff to establish a prima facie case." *See Id.* Nicosia has failed to satisfy this prerequisite. As Nicosia's allegations of malice fail to state a claim, any evidence presented to support such allegations, would not bring Nicosia any closer to establishing a prima facie case of malice. Moreover, Nicosia has failed to identify, either in his opposition to De Rooy's motion to strike or in his opposition to De Rooy's motion to dismiss, any theory which if proved would support a finding of malice.[12] Under these circumstances, the Court finds that Nicosia has not made an adequate showing that a defendant or a witness possesses evidence which would establish malice. *See Sipple v. Foundation for National Progress,* 71 Cal.App.4th 226, 247, 83 Cal.Rptr.2d 677, 690 (1999) (affirming trial court's denial of discovery request when plaintiff failed to identify additional facts expected to be revealed through discovery or explain how discovery would allow plaintiff to establish prima facie case).

Accordingly, the Court hereby GRANTS with prejudice De Rooy's motion to strike Nicosia's complaint.

## CONCLUSION

For the reasons expressed, it is hereby ordered:

1. De Rooy's motion to dismiss for lack of personal jurisdiction is DENIED.
2. De Rooy's motion to dismiss for failure to state a claim is GRANTED.

3. De Rooy's motion to strike is GRANTED.

The Clerk shall close the file.

**IT IS SO ORDERED.**

---

12. Of course, it is possible that with discovery Nicosia could uncover new evidence to support a theory of malice not yet identified. The mere possibility that this might occur, however, does not satisfy the standard articulated in *Lafayette* and *Sipple*.