69 F.3d 361
 24 Media L. Rep. 1039, 95 Cal. Daily Op. Serv. 8449,
95 Daily Journal D.A.R. 14,570
 Ralph UNDERWAGER, Plaintiff-Appellant,
v.
CHANNEL 9 AUSTRALIA; "60 Minutes" of Australia; Anne
Schlebaum; Mike Munro, Defendants,
and
James Peters, Sr.; Anna Salter; Kim Oates; Charles R.
Vaughn, Defendants-Appellees.
 No. 94-55227.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 8, 1995.
Decided Oct. 31, 1995.
 
 Robert E. Sutton, Milwaukee, Wisconsin, for plaintiff-appellant.
 Lawrence R. Levin, Levin & Funkhouser, Chicago, Illinois, for defendants-appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before: FLETCHER, WIGGINS, and FERNANDEZ, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 Ralph Underwager appeals the district court's dismissal of his defamation claims against Charles Vaughn and James Peters, Sr., for lack of personal jurisdiction and against Kim Oates on summary judgment (on the merits) arising from Oates's showing of a videotape in which Vaughn and Peters criticize Underwager's qualifications and performance as an expert witness on child sexual abuse.[1] We have jurisdiction under 28 U.S.C. Sec. 1291 and we affirm.
 
 BACKGROUND
 
 2
 Underwager is a Minnesota psychologist who has testified as an expert witness in more than 250 trials on the subject of the unreliability of children's testimony alleging sexual abuse. On August 5, 1990, the television program Sixty Minutes Australia broadcast a documentary, "Witness for Mr. Bubbles," in which American attorneys and psychologists disputed Underwager's theories and credentials. The segment was primarily concerned with Underwager's testimony for the defense in Crown v. Deren, the so-called "Mr. Bubbles" case, in which an Australian defendant was acquitted of charges that he had sexually assaulted his wife's nursery school students in bubble baths.
 
 
 3
 Among those who appeared on the program were Peters, at the time a senior staff attorney for the National Center for the Prosecution of Child Abuse in Virginia, and Vaughn, an attorney practicing in Indiana. Oates, a professor at the University of Sydney and chairman of the Division of Medicine of the Children's Hospital, as well as an expert witness for the prosecution in Crown v. Deren, replayed part of the Sixty Minutes program at the San Diego Conference on Responding to Child Maltreatment, held on January 22, 1992, in La Jolla, California.
 
 
 4
 Underwager sued Peters, Vaughn, and Oates in federal court in the Southern District of California. Underwager alleged that Vaughn and Peters conspired to defame him, to injure his professional reputation, and to interfere with his prospective economic opportunities; he also alleged that each defendant individually defamed him. The district court granted Peters's and Vaughn's motions to dismiss for lack of personal jurisdiction, and granted summary judgment for Oates. Underwager appeals. Oates requests double costs and attorneys fees.[2]
 
 DISCUSSION
 1. The Peters and Vaughn Claims
 
 5
 Underwager concedes that he cannot establish personal jurisdiction over Peters and Vaughn as individuals,[3] but argues that the district court failed to consider a "conspiracy theory" of personal jurisdiction over them. When the facts are undisputed, we review de novo a district court's determination in respect to personal jurisdiction. See Bourassa v. Desrochers, 938 F.2d 1056, 1057 (9th Cir.1991).
 
 
 6
 Underwager cites two district court opinions in which a conspiracy theory was applied. In one of those cases, the court required the plaintiff to allege specific overt acts in the forum state that furthered the conspiracy. Mandelkorn v. Patrick, 359 F.Supp. 692 (D.D.C.1973) (finding jurisdiction over individuals who conspired to "de-program" cult member). In the other, the court stated that jurisdiction could be exercised only "where substantial acts in furtherance of the conspiracy were performed in the forum state and the co-conspirator knew or should have known that the acts would be performed in the forum state." Gemini Enterprises, Inc. v. WFMY Television Corp., 470 F.Supp. 559, 564 (M.D.N.C.1979) (internal citations omitted) (finding jurisdiction over trade association whose advertising code local TV station observed).
 
 
 7
 Here, Underwager alleges no facts to even suggest a conspiracy between Peters and Vaughn on the one hand and Oates on the other hand. In fact, his amended complaint against Oates does not claim Oates conspired. While he states on appeal that "Oates obtained copies of the videotape from the producers of the program," this does not implicate in a conspiracy persons who merely appeared on the program.
 
 
 8
 Further, Underwager does not dispute Peters's and Vaughn's claims that they had no knowledge that Oates planned to play the tape in La Jolla. While the airing of an Australian TV program in Australia is reasonably foreseeable, the re-airing of such a program by a third party at a conference in California two years later is not. Thus, the district court correctly dismissed the claims against Peters and Vaughn for lack of personal jurisdiction. See also Wilson v. Belin, 20 F.3d 644, 649 (5th Cir.) (no jurisdiction over non-residents whose comments were solicited by reporters and published in newspaper circulated in forum state), cert. denied, --- U.S. ----, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994); Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201 (1st Cir.1994) (no jurisdiction in Massachusetts over California defendant who allegedly libelled plaintiff in comments made in phone conversation initiated by reporter in Massachusetts and published in Massachusetts newspaper).
 
 2. The Oates Claims
 
 9
 We review de novo a grant of summary judgment. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). We determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id. at 1130. To defeat the motion for summary judgment, the nonmoving party must "make a sufficient showing on [all] essential element[s] of [his] case with respect to which [he] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
 
 
 10
 As a preliminary matter, Underwager asserts that Oates is not entitled to First Amendment protection because he is not a United States citizen. We have no direct authority on the question of whether persons who are legally within the borders of our country but who are not citizens or resident aliens enjoy First Amendment rights. However, the cases suggest that they do. In Bridges v. Wixon, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945), Justice Murphy stated:
 
 
 11
 The Bill of Rights is a futile authority for the alien seeking admission for the first time to these shores. But once an alien lawfully enters and resides in this country he becomes invested with the rights guaranteed by the Constitution to all people within our borders. Such rights include those protected by the First and the Fifth Amendments and by the due process clause of the Fourteenth Amendment. None of these provisions acknowledges any distinction between citizens and resident aliens. They extend their inalienable privileges to all "persons" and guard against any encroachment on those rights by federal or state authority.
 
 
 12
 Id. at 161, 65 S.Ct. at 1455-56 (Murphy, J., concurring). In United States v. Barona, 56 F.3d 1087 (9th Cir.1995), we held that constitutional rights expressly limited to the "people," such as those created by the Fourth Amendment, are held only by "a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community" as contrasted to "the Due Process Clause of the Fifth Amendment which protects all 'persons'." Id. at 1093. Interestingly, within the First Amendment, the forepart refers to Congress making no law respecting an establishment of religion, or prohibiting its free exercise or abridging freedom of speech or of the press. Only when, in the latter part, it speaks of the right to peaceably assemble and to petition the Government for a redress of grievances does it refer to "the right of the people." Thus, there is no expressed limitation as to whom the right of free speech applies.
 
 
 13
 We conclude that the speech protections of the First Amendment at a minimum apply to all persons legally within our borders. This conclusion is certainly consistent with the Supreme Court's and our high elevation of such rights. Here, the attempt of a United States citizen to use our courts to deny the privilege of free speech to a visitor to the United States, legally within the country, cannot be countenanced. Accordingly, we hold that the First Amendment shields statements made by Oates during his visit.
 
 
 14
 The First Amendment requires a plaintiff who is a public figure to demonstrate actual malice by clear and convincing evidence. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 509, 111 S.Ct. 2419, 2429, 115 L.Ed.2d 447 (1991). "The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law." Milkovich v. Lorain Journal Co., 497 U.S. 1, 17, 110 S.Ct. 2695, 2705, 111 L.Ed.2d 1 (1990) (quoting Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 685, 109 S.Ct. 2678, 2694, 105 L.Ed.2d 562 (1989)).
 
 
 15
 Oates did not appear on the Sixty Minutes program. Underwager's claims against Oates are based on Oates's republication of the tape and his comments about Underwager at the San Diego conference. We affirm summary judgment on the following grounds.[4] First, with only one exception, the alleged defamatory statements do not contain or imply verifiable assertions of fact and, therefore, they are not actionable. Second, with regard to the one provable factual assertion, Underwager has failed to establish a genuine dispute as to the material issue of actual malice.[5]
 
 
 16
 a. Assertions of Fact
 
 
 17
 Oates contends that his comments at the San Diego seminar and the comments on the tape are statements of opinion on matters of public concern and, therefore, are fully protected under the First Amendment. With a single exception, we agree.
 
 
 18
 Although defamation is primarily governed by state law, the First Amendment safeguards for freedom of speech and press limit state law. New York Times v. Sullivan, 376 U.S. 254, 264, 84 S.Ct. 710, 717, 11 L.Ed.2d 686 (1964); Masson, 501 U.S. at 510, 111 S.Ct. at 2429. The scope of constitutional protection extends to statements of opinion on matters of public concern that do not contain or imply a provable factual assertion. Milkovich, 497 U.S. at 20, 110 S.Ct. at 2706 (rejecting categorical exemption of all statements in form of opinion; statement that may imply verifiable assertion of fact is actionable).
 
 
 19
 To determine whether a statement implies a factual assertion, we examine the totality of the circumstances in which it was made. First, we look at the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work. Next we turn to the specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation. Finally, we inquire whether the statement itself is sufficiently factual to be susceptible of being proved true or false. See Partington v. Bugliosi, 56 F.3d 1147, 1153 (9th Cir.1994) (applying three-factor test as the starting point for analysis); Unelko Corp. v. Rooney, 912 F.2d 1049, 1053 (9th Cir.1990), cert. denied, 499 U.S. 961, 111 S.Ct. 1586, 113 L.Ed.2d 650 (1991).
 
 
 20
 Under this analysis, all but one of the alleged defamatory statements from the videotape and from Oates's comments at the San Diego conference fall outside of the type of speech that is actionable. First, the general context and tenor of Oates's workshop make clear that the comments about Underwager by him and by those who spoke on the tape were expressions of the speakers' professional points of view (opinions) rather than factual assertions. Oates and Underwager testified on opposite sides of the Mr. Bubbles case, and are on opposite sides of the heated debate over child witness reliability. Undoubtedly Oates was invited to the seminar for the purpose of delivering a spirited critique of Underwager's position. Similarly, the format of the Sixty Minutes Program is an exploration of both sides of controversial topics and individuals. Underwager was given a chance to respond to his critics, but he declined to be interviewed for the program.
 
 
 21
 Second, some of the language on the tape and at the seminar was colorful, figurative rhetoric that reasonable minds would not take to be factual. Examples include: "... [Underwager] was obviously looking at greener pastures ..."; "Underwager must have trouble sleeping." Such language remains well within the realm of the lusty and imaginative expressions protected by the Constitution. Milkovich, 497 U.S. at 17, 110 S.Ct. at 2704-05. Because how one proves child abuse is a highly controversial subject, the audience to a discussion of defense tactics in child abuse cases would expect emphatic language on both sides. Therefore, the audience would be likely to recognize that the statements did not represent provable assertions.
 
 
 22
 Finally, we conclude that the statements are not provable as true or false because their content does not rest on "a core of objective evidence." Many of the statements reflect opinions of Underwager's motivations and personality. For example, when asked if Underwager was intrinsically evil, Oates replied, "I don't know. I mean I guess, I believe he's wrong." This expressed Oates's belief, not a general truth. "[T]he First Amendment requires that the courts allow latitude for interpretation." Partington, 56 F.3d at 1154 (quoting Moldea v. New York Times Co., 22 F.3d 310, 315 (D.C.Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 202, 130 L.Ed.2d 133 (1994)). But even if Oates had agreed that Underwager was intrinsically evil, such an assertion is not capable of verification.
 
 
 23
 The district court considered only the following statement on the Sixty Minutes tape to be problematic:
 
 
 24
 Munro: "In Mr. Bubbles case [Crown v. Deren ] he said his qualifications were never in question."
 
 
 25
 Peters: "Well, if he's talking about the Swan ruling, you could say he was perseverating."
 
 
 26
 Munro: "Lying."
 
 
 27
 Peters: "Yes."
 
 
 28
 Underwager insists that Peters accused him of perjury. However, Peters was evidently referring to the refusal of the trial court in State v. Swan to admit Underwager's proposed expert testimony because of the absence of peer review indicating the acceptance of his work by the scientific community. 114 Wash.2d 613, 790 P.2d 610, 632 (1990), cert. denied, 498 U.S. 1046, 111 S.Ct. 752, 112 L.Ed.2d 772 (1991).[6]
 
 
 29
 While we agree that Peters's statement may be an exaggeration, Underwager has failed to show that the statement implies a verifiable assertion of perjury.[7] The phrase "in question" was not clearly defined in the statement. Moreover, the term "lying" applies to a spectrum of untruths including "white lies," "partial truths," "misinterpretation," and "deception." As a result, the statement is no more than nonactionable "rhetorical hyperbole, a vigorous epithet used by those who considered [the appellant's] position extremely unreasonable." Milkovich, 497 U.S. at 17, 110 S.Ct. at 2705 (quoting Greenbelt Cooperative Publishing Assn., Inc. v. Bresler, 398 U.S. 6, 13-14, 90 S.Ct. 1537, 1541-42, 26 L.Ed.2d 6 (1970) (holding that the word "blackmail" used in that specific context was no more than rhetorical hyperbole)).
 
 
 30
 b. Actual Malice
 
 
 31
 In our view, the only alleged defamatory statement that could have constituted a false factual assertion was Oates's claim about Underwager's book, Accusations of Child Sexual Abuse: "$160,000 was the fee and it was a commissioned book by a consortium of insurance companies defending defendants so it was a biased book." Underwager denies having received anything other than royalties from the publisher.
 
 
 32
 To survive summary judgment, Underwager must show the existence of a genuine dispute over two material issues: (1) whether Oates's statements are false; and (2) whether Oates acted with "actual malice." Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 775, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986). Because we conclude that Underwager failed to demonstrate the existence of a material dispute about actual malice, we need not decide whether he has established a dispute over falsity.[8]
 
 
 33
 Actual malice involves making a statement with "knowledge of falsity or reckless disregard as to truth or falsity." Masson, 501 U.S. at 511, 111 S.Ct. at 2430. See also Harte-Hanks Communications, Inc., 491 U.S. 657, 109 S.Ct. 2678; Anderson v. Liberty Lobby, 477 U.S. 242, 244, 106 S.Ct. 2505, 2508 (1986); New York Times, 376 U.S. at 279-280, 84 S.Ct. at 725-26. As a public figure, Underwager must show by clear and convincing evidence that Oates "in fact entertained serious doubts as to the truth of his [statements] or acted with a high degree of awareness of ... probable falsity." Masson, 501 U.S. at 510, 111 S.Ct. at 2429 (quoting St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968); Garrison v. Louisiana, 379 U.S. 64, 74, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964)) (internal quotations omitted).[9]
 
 
 34
 There is no evidence either that Oates knew the statement about insurance industry fees was false or that he had any serious doubts about the truth of the statement but continued to act, in reckless disregard of the truth. In fact, Oates states that he relied upon the opinion in State v. Swan, in which the Washington Supreme Court quoted the trial court as stating that Underwager:
 
 
 35
 was not involved in an independent research undertaking, but rather was approached to undertake research by an interested party with an interest [in] the outcome of the research. It is the Court's memory [the psychologist's] research was undertaken at the behest of the insurance industry relative to civil claims for child sexual abuse.
 
 
 36
 790 P.2d at 632. Underwager has presented no evidence that Oates knew that Underwager's book was not financed by the insurance industry. Thus, Oates's reliance upon a statement in a published state supreme court opinion does not constitute recklessness.
 
 CONCLUSION
 
 37
 The district court's dismissal of the claims against Vaughn and Peters for lack of personal jurisdiction and the grant of summary judgment for Oates are
 
 AFFIRMED.[10]
 
 
 [1]
 The claim against Anna Salter has been dismissed upon stipulation of the parties
 
 
 [2]
 Underwager has sued some of these same defendants in Illinois, Maryland, Virginia, and Wisconsin. After these suits were filed, Oates obtained a permanent injunction from the district court in California prohibiting the filing of any additional lawsuits. We dismissed Underwager's appeal of the injunction for lack of jurisdiction
 
 
 [3]
 Peters was interviewed in Virginia and in Washington, D.C., while Vaughn was interviewed in Indiana
 
 
 [4]
 Underwager contends that the lack of any reason of record for the district court's granting summary judgment constitutes reversible error. We disagree. The district court was not required to provide findings of fact or conclusions of law. Fed.R.Civ.P. 52(a); Gaines v. Haughton, 645 F.2d 761, 768 n. 13 (9th Cir.1981), cert. denied, 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (finding of fact not required for summary judgment in defamation case). Underwager also contends that the absence of findings implies that the district court failed to consider all of his submissions. The record contradicts this contention. The district court specifically stated that it "has gone over this matter rather thoroughly."
 
 
 [5]
 Underwager also argues that summary judgment should not be granted when malice or other matters that involve the determination of a person's state of mind are at issue. In Anderson, the Supreme Court specifically rejected this argument. 477 U.S. at 256, 106 S.Ct. at 2514 (noting that even where defendant's state of mind is at issue, plaintiff must present affirmative evidence in order to defeat properly supported summary judgment motion)
 
 
 [6]
 The Washington Supreme Court also quoted the trial court as stating, "[T]he Court remains convinced [Underwager] did not have the qualifications to testify as a doctor.... [Underwager] [w]as a researcher who did not have bona fide qualifications in the view of the Court." Swan, 790 P.2d at 632
 
 
 [7]
 Even if Peters's statement were a provable assertion of fact, Underwager offers no evidence of malice. In his declaration, Underwager reveals that Oates is familiar with Peters and had no reason to doubt the truth of Peters's statements
 
 
 [8]
 Underwager's declaration in opposition to the motion for summary judgment may create a genuine dispute as to the truth of the statement about the insurance commission fee. Underwager stated, "The only payments for the book have been royalties from the publisher, C.C. Thomas which we received only after the book was published and copies were sold. No one commissioned the book." For the purpose of summary judgment, Underwager's declaration as "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255, 106 S.Ct. at 2513 (internal citation omitted)
 
 
 [9]
 Underwager argues that the heightened evidentiary standard of New York Times should not apply because Oates is a nonmedia defendant. We need not decide this issue because Underwager has failed to satisfy even the lower standard of preponderance of the evidence
 
 
 [10]
 We deny Oates's request for double costs and attorneys fees, as Underwager's claims are not frivolous