Filed 11/20/13  Agate v. IMG Worldwide CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JAMES AGATE,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>IMG WORLDWIDE, INC., et al.,<br><br>        Defendants and Respondents. | B243636<br><br>(Los Angeles County<br>Super. Ct. No. BC455630) |

        APPEAL from an order of the Superior Court of Los Angeles County.  Ronald M. Sohigian, Judge.  Affirmed.

        The Aftergood Law Firm and Aaron D. Aftergood for Plaintiff and Appellant.

        Akin Gump Strauss Hauer & Feld, Rex S. Heinke, Susan K. Leader, and Jessica M. Weisel; Mark J. MacDougall for Defendants and Respondents.

Plaintiff and appellant James Agate (Agate) appeals from the trial court's order granting a special motion to strike, pursuant Code of Civil Procedure section 425.16,[1] all of the causes of action asserted against defendants and respondents Theodore Forstmann (Forstmann) and International Management Group (IMG) (collectively "defendants") in Agate's complaint seeking damages for slander. We affirm the trial court's order.

## BACKGROUND

### The parties

IMG is an international sports and media business that owns and manages large-scale sporting events and represents athletes, fashion models, celebrities, corporations, and sports organizations. IMG employs nearly 3,000 people and operates in approximately 30 countries.

Forstmann was IMG's chairman and CEO. He was also a founding partner of the private equity firm Forstmann Little, which has bought and sold companies such as Gulfstream Aerospace, General Instrument, and Topps. Forstmann Little owns 24 Hour Fitness. Forstmann died in November 2011 after a lengthy illness. Kathleen Broderick, Margot McGinniss, and Bessemer Trust Company, N.A., the representatives of his estate, were substituted as defendants in his place.

Agate is an individual who resides in Las Vegas, Nevada. He was the owner of Agate Printing, a printing business, and had a long personal relationship with Forstmann.

### History of litigation between Agate and Forstmann

In February 2008, Agate sued Forstmann and 24 Hour Fitness alleging breach of an oral agreement concerning printing services for 24 Hour Fitness, in *Agate v. Forstmann*, Los Angeles Superior Court case No. BC386431 (*Agate I*). After the superior court sustained, with leave to amend, the defendants' demurrer to the complaint, Agate voluntarily dismissed *Agate I* in August 2008.

Despite the dismissal, Forstmann entered into a confidential settlement agreement with Agate in April 2009 to resolve the claims in *Agate I*. After Agate received the final

---

[1]     All further statutory references are to the Code of Civil Procedure, unless otherwise stated. A special motion to strike is also referred as an anti-SLAPP motion.

payment under the settlement agreement, he wrote to Forstmann demanding more money. When Forstmann refused to pay, Agate filed another lawsuit on September 2, 2010, against Forstmann, IMG, 24 Hour Fitness, and Kirkland & Ellis, LLP, in a case captioned *Agate Printing, Inc. v. Forstmann, et al.*, Los Angeles Superior Court case No. BC444880 (*Agate II*).

In October 2010, Agate amended the *Agate II* complaint to include inflammatory allegations, including allegations that Forstmann had used Agate "as a betting conduit" for "Forstmann's aggressive betting on and against athletes represented by IMG and events owned or controlled by IMG," including a wager based on "inside information" on a tennis match between Roger Federer and Rafael Nadal, both IMG clients. In the amended *Agate II* complaint Agate further alleged that he had arranged for "Forstmann's dates and interludes with escorts, models, and other people . . . who sold their 'time' and agreed to provide services to Forstmann in exchange for money" and that "Forstmann was concealing his gambling and writing off his losses and even, on occasion, his escort fees . . . as fabricated business expenses to [Agate Printing]." Agate further alleged that Forstmann had "made derogative comments about blacks, Jewish people, and other minorities" and "had singled out [IMG client Tiger] Woods as someone who he wanted to see fail."[2]

On October 13, the day after filing the amended *Agate II* complaint, Agate wrote to Forstmann:

> "To bring you up to date in the event you haven't heard, Agate Printing . . . filed the first amended complaint. . . . TMZ (www.tmz.com) has already jumped on the story. The first amended complaint is in the public record. You should expect to be inundated with questions from investigative reporters. You may want to carefully consider whether you want to deny my allegations."

---

[2]     The defendants moved to compel arbitration of *Agate II* under the terms of the April 2009 settlement agreement, and the superior court ordered the case to arbitration.

Agate's allegations received attention not only from TMZ, but from other publications such as USA Today, Fortune magazine, and the Daily Beast. Forstmann's responses to Agate's allegations in turn were published in financial publications, newspapers, and on celebrity news sites.

**The instant lawsuit and anti-SLAPP motion**

Agate filed this action on March 22, 2011, asserting three causes of action for slander. The first and second causes of action are against Forstmann and IMG, and the third cause of action is against Forstmann only. Agate's complaint alleged that Forstmann made statements to various publications falsely accusing Agate of being a "stalker," a "shakedown artist," an "extortionist," and "insane."

IMG filed an anti-SLAPP motion, arguing that the statements made by Forstmann and others concerned a matter of public interest and Agate could not establish a probability of prevailing on his claims. IMG further argued the allegedly defamatory statements were protected opinion, true, subject to the litigation privilege, or otherwise not actionable. Forstmann joined in IMG's anti-SLAPP motion.

In his opposition to the anti-SLAPP motion, Agate claimed that his first cause of action for slander was premised on false statements by Forstmann calling Agate "insane," a "stalker," a "shakedown artist," a "scumbag lowlife," "really insane," a "nut job," and having a "wire crossed." Agate claimed his second cause of action was based on false statements by Forstmann referring to Agate Printing as "a piece of shit company" and statements by Michael Sitrick (an alleged agent of IMG and Forstmann) that the allegations in *Agate II* were "beyond false" and "preposterous." The third cause of action, Agate maintained, was based on Forstmann's statements referring to Agate as an "extortionist." Agate further stated in his opposition that "[a]ny arguments by Defendants regarding any of the other statements do not matter as those statements are not the basis for any cause of action and only establish Defendants' malice."

Following a July 2, 2012 hearing at which the parties presented argument, the trial court granted defendants' anti-SLAPP motion and dismissed the action. This appeal followed.

4

**DISCUSSION**

## I. Applicable law and standard of review

Section 425.16, subdivision (b)(1) provides in relevant part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Subdivision (e) of section 425.16 defines an "act in furtherance of a person's right of petition or free speech under the United States Constitution or California Constitution in connection with a public issue" to include "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" (§ 425.16, subd. (e)(3)), or "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).)

Determining whether the statute bars a given cause of action requires a two-step analysis. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).) First, the court must decide whether the party moving to strike a cause of action has made a threshold showing that the cause of action "aris[es] from any act . . . in furtherance of the [moving party's] right of petition or free speech." (§ 425.16, subd. (b)(1); *Navellier, supra*, at p. 88.)

If the court finds that a defendant has made the requisite threshold showing, the burden then shifts to the plaintiff to demonstrate a "probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1); *Navellier, supra*, 29 Cal.4th at p. 88.) In order to demonstrate a probability of prevailing, a party opposing a special motion to strike under section 425.16 "'"must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."'" [Citation.]" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741 (*Jarrow*), fn. omitted.)

5

A trial court's order granting a special motion to strike under section 425.16 is reviewed de novo. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999.)

## II. Public issue or matter of public interest

Agate contends the trial court erred by granting the anti-SLAPP motion because defendants failed to establish that the alleged defamatory statements constitute protected speech in connection with a "public issue" or a matter of "public interest." Section 425.16 does not define the terms "public issue" or "public interest," but its preamble states that its provisions "shall be construed broadly" to safeguard "the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a); *Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1039 (*Nygard*).)

The legislative directive to construe section 425.16 "broadly" has led courts to recognize that "'there is a public interest which attaches to people who, by their accomplishments, mode of living, professional standing or calling, create a legitimate widespread attention to their activities . . . .' [Citation.]" (*Eastwood v. Superior Court* (1983) 149 Cal.App.3d 409, 422.) Courts have thus found that "public issues" for purposes of the anti-SLAPP statute may include the identity of a beneficiary named in the will of a well-known actor (*Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1347 [television broadcast showing Marlon Brando's housekeeper as beneficiary under his will was speech in connection with public issue]), a magazine's publication of "indie rock" bands' names (*Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 677), and use of a successful rock band's image in a video game (*No Doubt v. Activision Publishing, Inc.* (2011) 192 Cal.App.4th 1018, 1027 ["use of No Doubt's likeness in Band Hero is a matter of public interest because of the widespread fame No Doubt has achieved"].) Courts have also applied the anti-SLAPP statute to statements about large, international corporations and their officers. (See *Nygard, supra*, 159 Cal.App.4th at p. 1034 [statements about company and its founder protected concerned a public issue because both "'are internationally known public figures who spend a great deal of money and effort to promote their business, success, wealth and lifestyle'"]; *ComputerXpress,*

6

*Inc. v. Jackson, supra*, 93 Cal.App.4th at pp. 1007-1008 [statements about publicly traded company that had inserted itself into the public arena through press releases concerned a public issue under section 425.16].)

Not every statement about a person or entity in the public eye is sufficient to meet the public interest requirement of the anti-SLAPP statute. Absent a statutory definition for what constitutes "a public issue or an issue of public interest," courts have applied certain criteria for making this determination. "'California cases establish that generally, "[a] public issue is implicated if the subject of the statement or activity underlying the claim (1) was a person or entity in the public eye; (2) could affect large numbers of people beyond the direct participants; or (3) involved a topic of widespread, public interest." [Citations.] . . .' [Citation.]" (*Albanese v. Menounos* (2013) 218 Cal.App.4th 923, 932 (*Albanese*), quoting *D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1226.)

There is no question that Forstmann was a public figure and that members of the public were interested in him and in his company, IMG. The newspaper and magazine articles attached to Agate's complaint are abundant evidence of this.[3] Agate concedes that Forstmann and IMG are both subjects of public interest. He argues, however, that the allegedly defamatory statements do not concern Forstmann and IMG, but Agate and Agate Printing, neither of whom are public figures or subjects of public interest and that the challenged statements accordingly were not made in connection with an issue of public interest.

---

[3]    For example, the USA Today article describes Forstmann as "one of the most powerful men in sports, with a global sports, fashion and media firm boasting clients from Tiger Woods, Venus Williams and Gisele Bundchen to the NCAA and Wimbledon" and "a billionaire mogul whose annual conferences for A-list politicians, business moguls and sports leaders in Aspen has attracted the likes of Bill Clinton, Nelson Mandela and the late Pakistani Prime Minister Benazir Bhutto as well as NBA Commissioner David Stern, golf's Phil Mickelson and tennis' Monica Seles." The articles show the public was also interested in aspects of Forstmann's personal life as well. The USA Today article states that Forstmann "romanced the late Princess Diana and is in a relationship with *Top Chef* star Padma Lakshmi." The Fortune magazine article includes a photograph of Forstmann with Lakshmi, and mentions that he was embroiled in a custody battle involving Lakshmi's daughter.

Agate's narrow definition does not comport with the applicable standard for determining whether a public interest is implicated -- "'the subject of the statement or activity underlying the claim (1) was a person or entity in the public eye; (2) could affect large numbers of people beyond the direct participants; or (3) involved a topic of widespread, public interest.' [Citations.]" (*D.C. v. R.R., supra*, 182 Cal.App.4th at p. 1226.) Here, the activities underlying Agate's claims included Forstmann's responses to Agate's allegations that Forstmann made "aggressive" gambling bets, including a wager based on "inside information" involving IMG clients Roger Federer and Rafael Nadal, that Forstmann concealed his gambling debts and escort fees through payments made to Agate Printing, and that Forstmann made racial slurs against IMG client Tiger Woods. These allegations involved public figures and topics of widespread public interest. As noted in the Fortune magazine article attached to Agate's complaint, Agate's "bombshell" allegations "immediately made headlines." According to the USA Today article attached to Agate's complaint, the allegations about Forstmann's gambling bet "based on inside information" on a tennis match between Federer and Nadal prompted both the NCAA and professional tennis organizations to "express[] concern" and resulted in a company-wide policy at IMG prohibiting its nearly 3,000 employees from betting on college sports, including March Madness office pools. Under the applicable standard, the challenged statements were made in connection with a public issue or an issue of public interest within the meaning of section 425.16.

Agate cites *Albanese* and *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122 (*Weinberg*) as support for his argument that neither he nor the instant private dispute is a matter of public interest. Both of those cases are factually distinguishable.

*Albanese* involved a defamation action by a celebrity stylist against television personality Maria Menounos based on allegations that Menounos had falsely and publicly accused Albanese of theft. In affirming the denial of Menounos's anti-SLAPP motion, the court in *Albanese* concluded that even assuming that Albanese was "rather well known in some circles for her work as a celebrity stylist and fashion expert, there is no evidence that the public is interested in this private dispute concerning her alleged theft of

8

unknown items from Menounos . . . . In short, there is no evidence that any of the disputed remarks were topics of public interest." (*Albanese, supra*, 218 Cal.App.4th at p. 936.) By contrast, there was abundant evidence in this case of the public's interest in the parties' dispute. Agate himself elicited such interest by including in the *Agate II* complaint provocative allegations about Forstmann that generated media headlines.

*Weinberg* is also distinguishable. That case involved a dispute between two hobbyists who collected tokens, one of whom accused the other of stealing a token. The accuser then embarked on a campaign to exclude the suspected thief from an association of token collectors by publishing accusations in paid advertisements and letters to other collectors. (*Weinberg, supra*, 110 Cal.App.4th at pp. 1128-1129.) The court in *Weinberg* concluded the communications involved no issue of public interest because they concerned nothing more than a private dispute between private parties. (*Id.* at p. 1134.) Unlike *Weinberg*, there was abundant evidence in this case of widespread public interest in Forstmann, Agate, and their dispute.

Agate's provocative allegations about Forstmann and IMG's clients placed Agate and his dispute with Forstmann squarely in the public arena and made both a subject of widespread public interest. Forstmann's responses to those allegations are statements that were made "in connection with a public issue or an issue of public interest" within the meaning of section 425.16.

## III. Public forum

Agate argues that defendants' statements do not constitute protected speech because they were not made "in a place open to the public or a public forum" within the meaning of section 425.16, subdivision (e)(3). He argues that newspapers and other media outlets where public access is selective are not public fora within the meaning of the anti-SLAPP statute.

Courts are divided on the issue of whether a newspaper or magazine is a "public forum" within the meaning of section 425.16, subdivision (e)(3). (Compare *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 863 [newspapers not public fora because members of the public cannot freely publish their

9

opinions in them]; and *Weinberg, supra*, 110 Cal.App.4th at p. 1130 with *Nygard, supra*, 159 Cal.App.4th at p. 1038 [newspapers and magazines are public fora] and *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 476-477 [homeowners' association newsletter a public forum].)

In *Nygard*, Division Four of this court rejected a narrow interpretation of the term "public forum" that would exclude newspapers and magazines on the ground that members of the public cannot freely publish their opinions in them and held that "newspapers and magazines are public fora within the meaning of section 425.16, subdivision (e)(3)." (*Nygard, supra*, 159 Cal.App.4th at p. 1038.) The court in *Nygard* reasoned that the language of subdivision (e)(3) provides that a written statement comes within the anti-SLAPP statute if it is made *either* in "a place open to the public" *or* "a public forum." Applying well-established principles of statutory interpretation, the court in *Nygard* concluded "a 'public forum' cannot be synonymous with 'a place open to the public' -- if it were, the Legislature would not have defined the categories of protected speech in the disjunctive." (*Nygard*, at p. 1038.) The court in *Nygard* further concluded that the fundamental purpose of the anti-SLAPP statute, to protect against lawsuits brought primarily to chill the valid exercise of constitutional rights, "would not be served if we were to construe the statute to make section 425.16, subdivision (e)(3) inapplicable to newspapers, magazines, and other public media merely because the publication is arguably 'one-sided.'" (*Nygard*, at p. 1038.) Finally, citing California Supreme Court authority confirming that "public *access*, not the right to public *comment,* is the hallmark of a public forum," the court in *Nygard* concluded that "a newspaper or magazine need not be an *open* forum to be a *public* forum -- it is enough that it can be purchased and read by members of the public." (*Id.* at p. 1039.)

We find the court's reasoning in *Nygard* to be persuasive and apply it here. The newspapers, magazines, and websites in which defendants' statements were published constitute public fora within the meaning of section 425.16, subdivision (e)(3).

## IV. Defamation as protected speech

Agate contends defamation is not protected by the Constitution and can therefore never be a protected activity under the anti-SLAPP statute. This argument has been squarely rejected by California courts. (See, e.g., *Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 464 [rejecting trial court's ruling that defamation not protected under anti-SLAPP statute]; *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 890 [defamation is the very first of the "'favored causes of action in SLAPP suits'"]; *Scott v. Metabolife Internat. Inc.* (2004) 115 Cal.App.4th 404, 419-420 ["'defamation suits are a prime target of SLAPP motions'"].)

The trial court properly determined that defendants met their burden of demonstrating that their conduct and statements were acts in furtherance of the constitutional right of free speech, in connection with a public issue or an issue of public interest, made in a public forum.

## V. Probability of prevailing

Because the trial court correctly determined that Agate's claims against defendants arose from conduct that is protected under section 425.16, we must now determine whether Agate met his burden of "demonstrat[ing] a probability of prevailing on the claim[s]." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) To satisfy this burden, "the plaintiff must 'state[] and substantiate[] a legally sufficient claim.' [Citation.] 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" [Citation.]" (*Jarrow, supra*, 31 Cal.4th at p. 741, fn. omitted.) "Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation. [Citation.]" (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.)

### A. *Elements of defamation*

The three causes of action alleged in Agate's complaint are for defamation, defined as "'a false and unprivileged publication that exposes the plaintiff "to hatred,

11

contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." (Civ. Code, § 45.)' [Citations.]" (*Nygard, supra*, 159 Cal.App.4th at pp. 1047-1048.) "To state a defamation claim that survives a First Amendment challenge, a plaintiff must present evidence of a statement of fact that is 'provably false.' [Citations.]" (*Id.* at p. 1048.) Expressions of opinion, however pernicious, are protected under the First Amendment. (*Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 339-340.) ""'Thus, 'rhetorical hyperbole,' 'vigorous epithet[s],' 'lusty and imaginative expression[s] of . . . contempt,' and language used 'in a loose, figurative sense' have all been accorded constitutional protection. [Citations.]""" (*Nygard, supra*, at p. 1048.)

To determine whether the challenged statements are nonactionable opinions or provably false factual assertions, courts apply a totality of the circumstances test, examining the language of the statement, its tenor, and the context in which it was made. (*Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 809-810.) That determination is a question of law for the court. (*Id.* at p. 810.)

**B.  *Agate's opposition to the anti-SLAPP motion limits the bases for his defamation causes of action***

In his opposition to defendants' anti-SLAPP motion, Agate identified the specific statements that were the basis for each of his causes of action and the persons who made the statements. He expressly disclaimed reliance on any other statements by stating: "Any arguments by Defendants regarding any of the other statements do not matter as those statements are not the basis for any cause of action and only establish Defendants' malice." We accordingly consider only the statements Agate identified in the trial court below as the basis for his claims on appeal. (See *Heater v. Southwood Psychiatric Center* (1996) 42 Cal.App.4th 1068, 1079, fn. 10 [party is bound by admissions found in the pleadings].)

**C.  *Agate has waived any argument regarding the second cause of action***

In this appeal, Agate does not address any of the statements that were the basis for his second cause of action for slander against IMG and Forstmann. By failing to do so,

12

Agate is deemed to have abandoned any argument regarding the second cause of action. (*Murray Co. v. Occupational Safety & Health Appeals Bd.* (2009) 180 Cal.App.4th 43, 54, fn. 5.)  We therefore do not address that cause of action.

### D.  *None of Forstmann's challenged statements are provably false*

Agate's first and third causes of action for slander are premised on allegedly false statements by Forstmann calling Agate "insane," "really insane," a "nut job," and describing Agate as having a "wire crossed," a "stalker," a "shakedown artist," a "scumbag lowlife," and an "extortionist."  Agate has failed to establish that the challenged statements are provable factual assertions rather than rhetorical hyperbole or vigorous epithets.  Numerous cases have held that similar statements are nonactionable. (See, e.g., *Lieberman v. Fieger* (9th Cir. 2003) 338 F.3d 1076, 1080-1082 [applying California law and holding as a matter of law that statements referring to plaintiff as "Looney Tunes," "crazy," "nuts," and "mentally unbalanced" not defamatory]; *Ferlauto v. Hamsher* (1999) 74 Cal.App.4th 1394, 1403 [phrases "creepazoid attorney" and "loser wannabe lawyer" are classic rhetorical hyperbole and cannot reasonably be interpreted as stating actual facts]; *Yorty v. Chandler* (1970) 13 Cal.App.3d 467, 472-473 [political cartoon depicting mayor restrained in a straight jacket was rhetorical hyperbole].) Forstmann was a business executive, not a medical professional or psychologist.  No reasonable trier of fact would interpret his statements describing Agate  "insane," a "nut job," or having a "wire crossed" as assertions of provable fact.[4]

Agate claims that Forstmann's statements referring to him as a "stalker" is actionable slander per se because stalking is a crime.  As defined in the Penal Code, the crime of stalking is the willful, malicious, repeated following or harassing of another

---

[4]     Agate argues that the challenged statements were made simultaneously with statements alluding to "physical danger posed by [Agate]" and Forstmann's need to hire security guards.  Agate failed, however, to raise this argument in the trial court below and accordingly forfeited the right to do so for the first time in this appeal.  "It is well established that issues or theories not properly raised or presented in the trial court may not be asserted on appeal, and will not be considered by an appellate tribunal."  (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 117.)

13

person and making a credible threat with the intent to place that person in reasonable fear for his or her safety. (Pen. Code, § 646.9, subd. (a).) The term "stalker" appears once in an October 19, 2010 Daily Beast article, along with the terms "shakedown artist," and "scumbag lowlife." In the article, Forstmann describes his history with Agate, Agate's multiple lawsuits against him, and Agate's demands for money when Agate's "finances reached rock bottom." The article also discusses how Agate "recently turned up the heat several more notches" by releasing information to TMZ allegedly showing that Forstmann had bet that Roger Federer would beat Rafael Nadal during the 2007 French Open "based on inside information stemming from a conversation" between Federer and Forstmann before the match. The Daily Beast article does not describe any threat by Agate, nor does it suggest that Forstmann feared for his safety because of Agate. Read in context, Forstmann's statement referring to Agate as a "stalker," accompanied by the terms "shakedown artist" and "scumbag lowlife," refer to Agate's attempts to get Forstmann to pay him money, and not a threat with intent to place Forstmann in fear for his safety. The references are rhetorical hyperbole.

For the same reasons that Forstmann's "stalker" reference is not actionable, his statements referring to Agate as an "extortionist" are also nonactionable. In the October 2010 Daily Beast article discussed previously, Forstmann is quoted as saying "'I told my lawyer that I now want Agate in jail for extortion.'" This statement follows Forstmann's description of Agate's multiple lawsuits and demands for money, and an allegation by Agate that Forstmann had placed a gambling wager on a tennis match between two IMG clients "based on inside information."

The term "extortionist" also appears in a February 2011 Fortune magazine article that describes Agate's lawsuits and his threats, after dropping *Agate I*, to sue Forstmann again and include allegations about sports betting. In the article, Forstmann explains that he agreed to pay Agate a sum of money to make the case "go away forever." The article states: "Agate got his money, Forstmann says, 'for doing absolutely nothing except being an extortionist.'" The article then recounts that shortly after being paid, Agate filed *Agate II* and again threatened to include allegations about sports betting and gave

14

Forstmann "a few choices for paying up:  start a charity and name Agate to run it . . . ; start a real estate company and put Agate at its head; or sponsor him to play on the World Series of Poker tour . . . ."

Viewed in context, Forstmann's statements accusing Agate of "extortion" and referring to him as an "extortionist" are rhetorical hyperbole or vigorous epithets directed at Agate's litigation tactics and repeated demands for money.  (See *Blevins v. W.F. Barnes Corp.* (Ala.Civ.App. 1999) 768 So.2d 386, 391 [rejecting argument that defendant's claim that opposing attorney "'tried to extort money out of me because I refused to pay his demands'" was slander per se and finding statement to be rhetorical hyperbole].)

## CONCLUSION

Defendants made the requisite threshold showing that each of Agate's causes of action arises from an act in furtherance of the constitutional right of petition or free speech in connection with a public issue or an issue of public interest.  (§ 425.16, subds. (b), (e) & (f).)  The burden then shifted to Agate to demonstrate a probability of prevailing on his claims.  He failed to do so.  The trial court accordingly did not err in granting the anti-SLAPP motion.

## DISPOSITION

The order granting defendants' anti-SLAPP motion is affirmed.  Defendants are awarded their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ

We concur:


_____, P. J.          _____, J.*
BOREN                                    FERNS
_____
* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15